Richard A. **HAYES, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45A03–8608–CR–00232.

Court of Appeals of Indiana, Third District.

Oct. 27, 1987.

Rehearing Denied Jan. 20, 1988.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Richard A. Hayes was convicted by a jury of reckless homicide,[1] a class C felony, and causing death while intoxicated,[2] a class D felony. He was sentenced to a single term of six years.[3]

On appeal, he raises three issues:

1. Whether the State laid a proper foundation for the introduction of his blood alcohol level into evidence, and, thus, whether the court erred in allowing such evidence to be admitted.

2. Whether the conviction for reckless homicide is supported by sufficient evidence.

3. Whether the conviction for causing death while intoxicated is supported by sufficient evidence.

Affirmed.

On August 3, 1982, at about 1:30 p.m., Robert James Witham, his wife, Janice Witham, their two daughters, and a foster child were going south on Columbia Street near Lyon Street in Hammond, Indiana, in their Honda Civic automobile.

The two daughters were in the back seat of the car, and Janice was in the front passenger seat holding the foster child on her lap. It was a warm, dry, sunny day as Robert drove about thirty miles per hour in the curb lane of Columbia Street. As the Honda crossed Lyon Street, both Robert and Janice saw a blue and white pickup truck coming toward them going north on Columbia Street just south of the intersection with Highland Street.

Columbia Street between Lyon and Highland Streets is a four-lane city street with additional turning lanes at the intersection of Columbia and Highland. The pickup truck was in the left-turn lane, apparently getting ready to turn left onto Highland.

The Withams saw the pickup make a left turn to go west on Highland. The driver of the truck, Richard Hayes, stated that he did not know ahead of time that Highland Street was closed and that it was blocked off by barricades. He also stated that upon approaching the intersection, "... some kind of truck pulling out of the drug store ..." blocked his view of the barricades and that the barricades were set back from the intersection far enough so that he did not see them until he attempted to turn.

Janice estimated that the truck was going twenty-five to thirty miles per hour before the turn while Robert estimated that the truck was going no more than fifteen to twenty miles per hour as it started to turn. Hayes stated that he had slowed his truck from fifty miles per hour to about thirty miles per hour as he neared the intersection. He estimated that his truck was traveling at about fifteen to twenty miles per hour as he made the left-hand turn.

The Withams said that Hayes almost hit the barricades on Highland, coming within inches of them. Then, Robert saw the truck, without slowing down, turn sharply to go northeasterly back out across the southbound and northbound lanes of Columbia Street. It almost hit the curb on the east side of Columbia. Before the truck got to the eastern curb of Columbia, Hayes steered his truck back toward the northwest in an attempt to correct the truck's direction of travel. Robert slowed his car's speed to about twenty to twenty-five miles per hour and stayed in the same lane near the curb. When Hayes steered his truck to avoid the eastern curb of Columbia, the truck proceeded to go back at an angle toward the lane in which the Withams' car was going south. Hayes attempted again to correct his steering; however, according to Hayes, something connected with the truck's steering prevented him from turning his steering wheel back to the right. When Hayes realized that his truck was heading back into the southbound lanes, where the Withams' car was approaching, he slammed on his brakes to

1. I.C.1976, 35–42–1–5 (Burns Code Ed., 1985 Repl.).

2. I.C.1939, 9–4–1–54 (Burns Code Ed., 1980 Repl.) (repealed).

3. I.C.1976, 35–50–2–6 (Burns Code Ed., 1985 Repl.) (class C felony); I.C.1976, 35–50–2–7 (Burns Code Ed., Supp.1987) (class D felony).

try to prevent an accident from occurring. The truck hit the Withams' car at an angle on the driver's side door extending backward along the left side of the car. The impact spun the car around, causing Robert to hit his head on the steering wheel. He temporarily blacked out. The truck continued to weave down the street in the southbound lanes of Columbia for about forty to fifty feet before coming to a stop with its left front tire against the western curb of Columbia.

The Withams' seven-year-old daughter, Katrena, had been sitting in the back seat on the driver's side. She suffered a skull fracture which caused her death on the same day as the collision.

Hammond Police Department Traffic Investigator, Jay Govert, arrived at the scene shortly after the accident. He said he approached the man in the truck, who he later discovered was Richard Hayes. He said Hayes was sitting on the passenger side of the truck staring off into space as if he did not know what was going on. Govert asked Hayes if he was hurt. Hayes did not look at him, but said that he was not hurt. Hayes then asked Govert if he should get out of the truck, but Govert did not answer because Robert had come up to the truck and was yelling at Hayes. Govert took Robert back to the curb, sat him down, and had the medics look at his head injury.

When Govert returned to the truck Hayes was still sitting inside. Govert again asked Hayes if he was hurt because Hayes appeared to be dazed. Hayes said that he was not hurt, and once again asked Govert if he should get out of the truck. Govert could smell alcohol. He asked Hayes to get out of the truck. Hayes was unsteady on his feet and needed assistance to walk back to Govert's squad car.

While Hayes was in the squad car, Govert detected a very strong odor of alcohol on Hayes's breath. At Govert's request, Hayes produced his driver's license and gave it to Govert. Hayes told Govert that he did not know how the accident had happened and that he had lost control of his truck. He could not tell Govert which di-

rection he was going before the accident. Govert described Hayes's speech as being slurred or thick-tongued. Govert felt that he had probable cause to believe that Hayes had been driving under the influence in that there was an odor of alcohol on his breath. Further, Hayes appeared to be dazed, he had been unsteady on his feet, his speech was slurred and thick-tongued, and a partially consumed bottle of Scotch whiskey was found on the floor of his truck. Govert read to Hayes the Implied Consent Law and his *Miranda* rights. Hayes refused to take a Breathalyzer test and, according to Govert, became very uncooperative. Govert said that Hayes became angry when he was told that he was going to be taken to the police station.

At the police station, Hayes refused to submit to a Breathalyzer test. At around 3:00 p.m., Lt. Vernon Strvjak, Govert, and another officer of the Hammond Police Department took Hayes to St. Margaret's Hospital to have blood drawn from Hayes. Hayes refused to cooperate and had to be forcibly held down so that the technician could draw his blood. Govert saw the blood drawn from Hayes, and the technician gave Govert the vials containing Hayes's blood.

Govert said that he took the vials of blood back to the police station with him and marked the vials with the date, time, and his initials. Govert first testified that he had kept the blood samples with him at the police station, unrefrigerated, on a hot and humid day, until he got off of work at 10:30 p.m. He stated that he took the vials to the Northwest Toxicology Lab in Gary the next morning. However, after a recess during which Govert discussed his testimony with the Deputy Prosecutor, Govert amended his testimony and claimed that he had gone to his own home within thirty to forty-five minutes after the blood samples were taken from Hayes, and that he had placed the blood samples in the refrigerator at his home.

Diane Quanella, a toxicologist at the Northwest Indiana Criminal and Toxicology Laboratory in Gary, tested the blood samples which had been submitted by Go-

vert on August 4, 1982. She was unable to run the tests on the whole blood because it had clotted. She said the clotting could have been caused by leaving it unrefrigerated on a hot day and because no anti-coagulant had been placed in the container. As a result, she could only check the serum or liquid part of the blood. She testified that the decomposition of the blood itself possibly produces small amounts of ethanol. She stated that the serum ethanol level in the blood samples was 0.288 percent. She admitted on cross-examination that the Indiana statutes on blood alcohol content are framed in terms of blood ethanol levels and not serum ethanol levels. She stated that the serum ethanol level is approximately twelve percent higher than the blood ethanol level. Thus, she calculated that Hayes's blood ethanol level was 0.254 percent. She also testified that she could distinguish between rubbing alcohol and drinking alcohol and that she found no rubbing alcohol in this sample.

Lt. Strvjak testified that he had the truck checked at the scene to see if the steering and brakes worked. These tests involved pushing the brake to see if the pedal would go to the floor and turning the steering wheel to see if it would spin freely. Lt. Strvjak said that if the brake pedal did not go all the way to the floor, it would mean that the brakes worked. He said that the truck's brake pedal did not go to the floor. He also stated that if the steering wheel did not spin freely that would mean that the steering was working. He said that the steering wheel did not spin freely.

Hayes testified that he had worked the midnight shift at Inland Steel on August 2, 1982, and August 3, 1982. After he got off work, he had one sixteen ounce beer at 9:00 a.m. and a second one at around 10:30 a.m. He drove to his daughter's house at around noon, and he had another beer there. Shortly before 1:00 p.m., Hayes left and drove to a McDonald's restaurant. He had not eaten since 4:00 a.m. The collision occurred shortly after he left McDonald's.

Hayes alleged that he suffered from hypoglycemia. He described a hypoglycemia attack and stated it can be brought on by not eating properly and by stress. He said such an attack caused dizziness, lightheadedness, and left a person wobbly and weak. Hayes testified that immediately after the collision, he began suffering the symptoms of a hypoglycemia attack. He said as he was sitting in the truck feeling dizzy and trying to figure out what had caused the accident, he saw a bottle of Scotch lying on the floor of the truck. He thought the bottle had come out from under the seat during the collision because he had not known that it was in the truck. He said that he took a couple of big gulps out of the bottle to try to calm himself.

Additional testimony revealed that after the collision, the truck was towed to a storage lot. When someone tried to reclaim the truck it could not be driven because the wheels would not turn. There was no clear evidence whether this was attributable to damage from the collision or for some other reason. The defendant's son, Richard, stated that the bottle of Scotch was his and that he had left it in his father's truck and forgotten about it.

## I.

### Evidence of Blood Alcohol Level

■ Hayes contends that the State failed to lay a proper foundation for the introduction of his blood alcohol level into evidence because no one present at the time his blood was taken testified as to the procedures used to take his blood or as to whether the containers were clean or contaminated with ethanol at the time his blood was put into them. Therefore, he contends, the court erred in allowing evidence of his blood alcohol level to be admitted.

He further states:

It is ... clear from Quanella's [the toxicologist's] testimony that somewhere along the line proper procedures were not followed because no anti-coagulant was placed in the samples to prevent it from decomposing. In fact, the samples did decompose and coagulate because there was no anti-coagulant and probably

also because of Govert's leaving the samples unrefrigerated on a hot day.
Brief at p. 20.

Thus, since Quanella testified that decomposition of blood produces "small amounts" of ethanol and that the impact of these small amounts on the percentage of alcohol she claimed was present in the blood samples is unknown, Hayes contends that there is no way of knowing if the additional ethanol was enough to raise the total percentage of alcohol in the blood above the presumptive level of .10 percent "or at the very least [make] it appear that Hayes was far more intoxicated than he really was."

The admissibility of fungible evidence such as blood samples depends upon a foundation which establishes, *inter alia,* a continuous chain of custody. *Orr v. State* (1984), Ind.App., 472 N.E.2d 627, 630, *trans. denied.* The purpose of the rule requiring the State to show a continuous chain of custody of fungible evidence is to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence. *Arnold v. State* (1982), Ind., 436 N.E.2d 288, 291. Thus, the foundation is required to connect the exhibit with the defendant and show the continuous whereabouts of the exhibit from the time it comes into the possession of the police until it is laboratory tested. *Lucas v. State* (1980), 274 Ind. 635, 413 N.E.2d 578, 582, *reh. denied.*

In general, the admission of evidence lies within the sound discretion of the trial court and will require reversal only if that discretion has been so abused as to deny the defendant a fair trial. *Johnson v. State* (1983), Ind.App., 450 N.E.2d 123, 124, *reh. denied.* Here, the trial court did not abuse its discretion in admitting evidence of Hayes's blood alcohol level.

First, although no one testified as to whether the containers were clean or contaminated with ethanol at the time the blood was put into them, the mere possibility that evidence might have been tampered with will not make the evidence totally objectionable. *Conrad v. State* (1974), 262 Ind. 446, 317 N.E.2d 789, 791. The State is not required to exclude every possibility of tampering. *Robles v. State* (1987), Ind., 510 N.E.2d 660, 665.

In *Zimmerman v. State* (1984), Ind.App., 469 N.E.2d 11, the defendant was convicted of driving while intoxicated under the now-repealed I.C. 9-4-1-54. He also argued that the evidence was insufficient to prove that the container into which the blood sample was placed was sterile. There, the Court stated: "We ... note that [the defendant] presented absolutely no evidence that the container actually was contaminated." *Id.* at 18. The Court then cited *Conrad, supra,* and found the evidence sufficient to establish a proper chain of custody and a proper foundation for the admission of the defendant's blood alcohol level.

In *Orr, supra,* Judge Miller stated:
When fungible evidence is subjected to analysis or testing, *it is incumbent upon the State to present evidence of the doctor or someone in authority who was present at the time of the taking of the specimen* and to further demonstrate a chain of custody of the specimen to the lab where the testing was made and the conclusions drawn. (Emphasis added.)
*Id.* at 630.

Hayes interprets this passage to mean that the State must elicit testimony *from* a doctor or someone in authority who was present at the time of the taking of the blood as to the procedures used in that taking. However, such an interpretation is incorrect. Indeed, in *King v. State* (1979), Ind.App., 397 N.E.2d 1260, *trans. denied,* we stated:
We do not go so far here as to hold that a complete and detailed description of scientific tests forming the basis of the witness' opinion must be included in a proper foundation. Under circumstances such as these, *it is only necessary that the type of test be identified and generally described and that the person doing the testing also be identified.* It is within the discretion of the trial court to require more than this should circumstances so warrant. (Emphasis in original.)

*Id.* at 1270, citing *McDonald v. State* (1976), 265 Ind. 167, 172, 352 N.E.2d 708, 712.

Thus, *Orr* stands for the proposition—as does *King* and *McDonald*—that the State must elicit testimony *about* a doctor or someone in authority: *Who* was present at the time of the taking? In this way, the reliability of the taker is established.

■ Secondly, although no anti-coagulant was added to the blood sample, making it impossible for the toxicologist to measure the ethanol alcohol level of Hayes's blood, she was able to measure the serum alcohol level of his blood. She testified that his serum alcohol level was 0.288 percent; then, she converted this figure to the corresponding ethanol alcohol level of 0.254 percent. This procedure was approved in *Shuman v. State* (1986), Ind.App., 489 N.E.2d 126, 129, *trans. denied.*

The toxicologist also testified that the decomposition of the blood may have caused "small amounts" of ethanol to appear in the blood sample. Thus, Hayes contends there is no way of knowing if the additional ethanol was enough to raise the total percentage of alcohol in his blood above the presumptive level of .10 percent. Yet, the ethanol alcohol level was 0.254 percent—more than twice the presumptive level of .10 percent.[4]

■ The fact that a scientific test is subject to error if not properly conducted is not a reason for rejecting the evidence adduced by such a test. The persuasiveness of such evidence is in large measure dependent upon the expertise of the witness who conducted it; in the final analysis, this is to be determined by the jury after an opportunity for cross-examination. *Reid v. State* (1978), 267 Ind. 555, 372 N.E.2d 1149, 1152.[5]

Therefore, the admission of evidence of Hayes's blood alcohol level did not deny him a fair trial.

## II.

### Reckless Homicide

Hayes contends that there was insufficient evidence to convict him of reckless homicide; that, at most, he acted negligently.

Where the sufficiency of evidence is challenged on review, this Court will neither weigh the evidence nor determine the credibility of witnesses. Rather, we will look to evidence most favorable to the State together with all reasonable inferences therefrom. We will then determine if there is substantial evidence of probable value from which the trier of fact might reasonably infer guilt beyond a reasonable doubt. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937.

■ I.C. 35-42-1-5 provides:
A person who recklessly kills another human being commits reckless homicide, a class C felony.

I.C.1976, 35-41-2-2(c) (Burns Code Ed., 1985 Repl.) provides:
A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

The evidence most favorable to the State shows, first, that on the date of the accident, Hayes was under the influence of alcohol. Second, the evidence shows that Hayes was traveling at least fifteen miles per hour when he attempted to turn left onto Highland Street. Then, once he discovered the presence of barricades on

---

**4.** *See* I.C. 9-4-1-54(b)(4)(A) (now repealed): "Evidence that there was ten hundreds percent (.10%) or more by weight of alcohol in his blood constitutes prima facie evidence that he was intoxicated."

**5.** It should be noted that the admission of improper evidence which tends only to disclose a fact proven by other properly admitted evidence is harmless error. *Pollard v. State* (1982), Ind.

App., 439 N.E.2d 177, 184, *reh. denied.* Govert testified that there was a strong smell of alcohol on Hayes's breath, that he appeared to be dazed, that he was unsteady on his feet, that his speech was slurred and thick-tongued, and that a partially consumed bottle of Scotch whiskey was found on the floor of his truck. *See Garland v. State* (1983), Ind.App., 452 N.E.2d 1021, decided under the now-repealed I.C. 9-4-1-54.

Highland Street, rather than stop or slow down, he proceeded to turn around and cross four lanes of traffic on Columbia Street, hit the curb on the other side of Columbia Street, then veer into the southbound lane of Columbia Street and hit the Withams' car. Because this constitutes substantial evidence of probative value from which the jury might reasonably infer reckless conduct, we hold there was sufficient evidence to convict Hayes of reckless homicide.

### III.

### *Causing Death While Intoxicated*

■ Hayes also contends that there was insufficient evidence to convict him of causing death while intoxicated.

I.C. 9–4–1–54(b)(1) provided:

A person who operates a vehicle while:

(A) Intoxicated; or

(B) Unlawfully under the influence of a controlled substance;

commits a class A misdemeanor. However, the offense is a class D felony if it results in the death of another person.

Hayes argues that because his blood was not tested until approximately three hours after the accident, it should have been excluded from evidence. And, he states that Govert's testimony regarding his appearance and mind-set following the accident was rebutted by evidence that he was aware, alert, and in control during the accident.

Hayes's first argument is directly refuted by *Smith v. State* (1986), Ind.App., 502 N.E.2d 122, *reh. denied.* There, the Court held that evidence of a blood alcohol test result was relevant and admissible even though the result was obtained some time after an alleged driving while intoxicated violation. This was so since the evidence tended to prove that at some time prior to his arrest, the defendant had consumed some quantity of alcohol which might have resulted in intoxication. *Id.* at 126.

Hayes's second argument is also unpersuasive in that, on review, we will neither weigh the evidence nor determine the credibility of witnesses.

Therefore, we hold there was sufficient evidence to convict Hayes of causing death while intoxicated.

Affirmed.

RATLIFF, C.J., concurs.

GARRARD, J., concurs in result.