**HYPERBARIC OXYGEN THERAPY SYSTEMS, INC., Appellant–Plaintiff,**

v.

**ST. JOSEPH MEDICAL CENTER OF FORT WAYNE, INC., Appellee–Defendant.**

No. 02A03–9702–CV–57.

Court of Appeals of Indiana.

July 14, 1997.

Michael T. Yates, Moss, Crowell, Harris, Yates & Long, Fort Wayne, for Appellant–Plaintiff.

Steven H. Pratt, Pamela J. Jones, Hall, Render, Killian, Heath & Lyman, P.C. Indianapolis, for Appellee–Defendant.

## OPINION

GARRARD, Judge.

The trial court denied Hyperbaric Oxygen Therapy Systems' ("HOTS") motion for partial summary judgment and granted St. Joseph Medical Center of Fort Way ne's ("St.Joseph") cross-motion for summary judgment. HOTS appeals the trial court's order.

### FACTS AND PROCEDURAL HISTORY

HOTS is a California corporation authorized to conduct business in Indiana. Its business includes the manufacture, sale and leasing of hyperbaric oxygen equipment and the providing of hyperbaric oxygen chamber services, related services and staff to medical care providers for use in the treatment of certain emergency and trauma patients, non-healing wound patients and burn patients.

Record at 27. On July 11, 1990, HOTS entered into an "Exclusive Hyperbaric Lease Services Agreement" (hereinafter "the Agreement") with St. Joseph, agreeing to lease certain equipment and provide exclusive hyperbaric services subject to the conditions of the Agreement. In addition to providing St. Joseph with an option to purchase HOTS' equipment, the Agreement contained a clause addressing the potential purchase and installation by St. Joseph of a permanent hyperbaric medical system within the hospital. Section 6.16 of the Agreement provided:

> If the Hospital elects to buy the Equipment, and install it as a permanent system, the Hospital agrees that Company shall have the right to match the lowest responsive bid or highest ranked proposal, to engineer the installation, i.e., design for removal from the mobile trailer and installation into a permanent site inside the Hospital, and to perform the actual installation of all the necessary components to ensure a certified and licensable hyperbaric medical system. If the Hospital purchases a new hyperbaric medical system for installation into a permanent site inside the hospital during the term of this Agreement or within two (2) years after termination of this Agreement (except if such termination is pursuant to Section 6.3(a) of this Agreement), the Hospital agrees to provide Company the right to match the lowest responsive bid or highest ranked proposal to sell Hospital the new equipment and install such system in the designated location. As a condition of the right of first refusal conferred in this Section, Company shall proffer a responsive bid or proposal in connection with (i) the engineering services relating to the installation and the actual installation of the equipment in a permanent site, and (ii) the sale and installation of a new hyperbaric oxygen system. . . .

Record at 58–59.[1]

In April 1994, St. Joseph sent a letter to HOTS indicating that St. Joseph was in the planning stages for replacing its hyperbaric oxygen treatment system, and enclosed a "Request for Proposal" which outlined the

---

1. "Equipment" was defined in Section 1.1 of the Agreement as the equipment described in Exhibit A, which included the various components of the mobile system. Record at 32, 61.

specifications. St. Joseph asked HOTS to respond to the request and, in May 1994, HOTS submitted its proposal which included the pricing of its system.

St. Joseph sent correspondence to HOTS on December 13, 1994, indicating that it had selected a vendor, Gulf Coast Hyperbaric ("Gulf Coast"), based on "their being able to provide a system that meets the specifications as listed in our RFP [Request for Proposal] and at the lowest cost." Record at 101. Additionally, St. Joseph's letter to HOTS stated, in part:

> Per the terms of our current contract with Hyperbaric Oxygen Therapy Systems Inc., Hyperbaric Oxygen Therapy Systems has the right of first refusal on providing a chamber to St. Joseph Medical Center. Enclosed is a copy of the proposal from Gulf Coast Hyperbaric. Please submit in writing your intentions to meet or exceed the pricing and equipment specified by Gulf Coast Hyperbarics in their proposal. The system selected includes the color closed circuit television at a total price of $982,035.
>
> Your response is to be mailed to the attention of Phil Henneman, and must be received no later than Thursday, December 22, 1994. Failure to respond by December 22, 1994 will result in your forfeiting your right of first refusal.

Record at 101.

HOTS notified St. Joseph in a letter dated December 20, 1994, of its intent to exercise its right of first refusal to match Gulf Coast's bid.[2] On December 21, 1994, St. Joseph sent a letter to HOTS indicating that there had been a misunderstanding regarding acceptable materials for the construction. St. Joseph stated that since materials in Gulf Coast's proposal were listed with specific brand names, HOTS was required to use the same brands with the same specifications as "listed on a line for line basis" in Gulf Coast's proposal. Due to the misunderstanding,[3] St.

Joseph was "agreeable to extending the deadline for response from December 22nd until December 29, 1994." Record at 376. On December 27, 1994, HOTS sent a letter to St. Joseph reaffirming its desire to match Gulf Coast's proposal, including the level of installation and the listed brand names on a line for line basis:

> First, HOTS acknowledges SJMC's acceptance of Gulf Coast Hyperbaric explanation and correction of non compliant chamber design. HOTS still believes Gulf Coast bid to be non responsive, however, HOTS will proceed to match their proposal.
>
> Second, HOTS hereby matches and rebids $982,034.00 for the Gulf Coast specified system as quoted. HOTS will provide the listed brand names specified by Gulf Cost on a line for line basis in the Gulf Coast proposal where such line items are specified. Likewise the level of installation specified by Gulf Coast will also be met.

Record at 103.

In a letter to HOTS dated January 4, 1995, St. Joseph indicated that it was in receipt of HOTS' December 27, 1994 letter and that "[t]here are additional items that we need clarification and or agreement on before we can reach a decision on the successful vendor." Record at 104. Moreover, St. Joseph requested that HOTS provide the following: a current copy of its FDA registration and ASME certification; a list of references of installed sites where HOTS had no financial interest; a $1,000,000 performance bond; a new proposal based on the specific details in Gulf Coast's proposal; various financial information; and a copy of its standard purchasing agreement. St. Joseph required a response from HOTS in writing by January 13, 1995. Record at 105. HOTS sent a letter dated January 9, 1995 responding to St. Joseph's requests. Record at 380–82.

On January 29, 1995, St. Joseph informed HOTS by letter that it had chosen Gulf Coast

---

**2.** HOTS also noted concern in its December 20, 1994 letter that Gulf Coast's bid was non responsive for failing to use steel in the construction which was required for certification. This matter was cleared up by St. Joseph's letter on December 21, 1994, indicating that Gulf Coast had made an error in its proposal which had been corrected.

**3.** HOTS indicated in its December 20, 1994 letter that it would use "equal or higher standard materials where standards of practice or purchasing differ. (agreed to per conversation with Mr. Dale Law [representative of St. Joseph] and Mr. Ken Rowell of HOTS)." Record at 374.

as the successful vendor based on an evaluation and comparison of the HOTS proposal to the Gulf Coast proposal. St. Joseph concluded that the Gulf Coast proposal was "highest ranked and not matched by HOTS." Record at 383. St. Joseph listed areas in which it believed that HOTS did not match Gulf Coast, including: concerns about HOTS' financial stability; concerns with the FDA registration; failure of HOTS to honor prior promises; concerns regarding HOTS' references; the fact that HOTS had no significant construction since 1990 and that Gulf Coast had built three (3) hyperbaric chambers recently; concerns regarding HOTS' performance under the current lease agreement; concerns regarding the current chamber equipment; and the difference in the manner of payment between Gulf Coast and HOTS. Record at 383–85.

On September 11, 1995, HOTS filed an action alleging that St. Joseph breached the Agreement, more specifically Section 6.16, by refusing to purchase the new hyperbaric medical system from HOTS despite HOTS' agreement to match Gulf Coast's bid. St. Joseph filed an answer on November 7, 1995, denying the allegations and raising affirmative defenses. On March 25, 1996, HOTS filed a motion for partial summary judgment and designation of factual materials, and subsequently, St. Joseph filed its motion for summary judgment and designation of evidentiary materials on April 24, 1996. After a hearing on the motions, the trial court granted summary judgment on May 23, 1996 in favor of St. Joseph and denied HOTS' motion for summary judgment. The trial court denied HOTS' subsequent motion to correct errors. HOTS appeals the trial court's grant of summary judgment in favor of St. Joseph.

## ISSUES

I. Whether the Agreement provided HOTS with a right of first refusal to sell.

II. Whether HOTS, provided it had a right of first refusal to sell, failed to properly exercise its right as a matter of law.

### STANDARD OF REVIEW

■ "When reviewing the grant of summary judgment, we stand in the shoes of the trial court and apply an identical standard." *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 438 (Ind.Ct.App.1990), *trans. denied.* "Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* "In determining whether there is a genuine issue of material fact precluding summary judgment, all doubts must be resolved against the moving party and the facts set forth by the party opposing the motion must be accepted as true." *Id.* Even when the facts are undisputed, if the evidence reveals a good faith dispute regarding the inferences that may be drawn from such facts, summary judgment is inappropriate. *Id.* The granting of summary judgment will be affirmed on any legal basis supported by the record. *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 629 (Ind.Ct.App.1995).

### DISCUSSION AND DECISION

#### I

HOTS contends that the Agreement provided the right of first refusal to sell equipment to St. Joseph. In opposition, St. Joseph maintains that the Agreement only provided HOTS with the right to match the lowest responsive bidder or highest ranked proposal and not a right of first refusal.

■ We initially note, in examining the Agreement, that "when reasonable persons would find a contract susceptible of more than one construction, an ambiguity exists and should be resolved by the trier of fact." *Fetz v. Phillips*, 591 N.E.2d 644, 647 (Ind.Ct. App.1992). "When the language of a written contract is not ambiguous, however, its meaning is a question of law 'for which summary judgment is particularly appropriate.' " *Id.* (quoting *Slutsky–Peltz Plumbing & Heating Co., Inc. v. Vincennes Community School Corp.* 556 N.E.2d 344, 346 (Ind.Ct. App.1990)). In interpreting an unambiguous contract, we give effect to the parties' intentions as expressed in the four corners of the instrument. *Id.* "Clear, plain, and unambiguous terms are conclusive of that intent. This

court will not construe clear and unambiguous provisions, nor will we add provisions not agreed upon by the parties." *Id.* [citations omitted].

In examining the language of Section 6.16 of the Agreement, St. Joseph agreed that if it purchased a new hyperbaric medical system, it would provide HOTS with "the right to match the lowest responsive bid or highest ranked proposal to sell" and install the new system. Record at 58. Immediately thereafter, the Section provided for HOTS to proffer a responsive bid or proposal "[a]s a condition of the right of first refusal conferred in this Section...." *Id.*

■ The "right of first refusal" is explained as follows in CORBIN ON CONTRACTS:

These transactions (which this treatise uses under the generic caption "right of first refusal") are closely related to the purposes of option contracts and yet are very dissimilar in the legal relations of the parties who make them. To include them under the heading "Option Contracts," as if they were merely a special variety thereof, is not only confusing to courts and anyone who contracts but also is logically inaccurate. They are not offers and create no power of acceptance. These transactions create a right, a contractual right to "preempt" another. *Some further confusion stems from the diverse and inconsistent customs of describing this right.* Notwithstanding, the emphasis should be on the word "right" and "Right of First Refusal" or, perhaps, "Preemptive Right" is the most apt description.

This right customarily, *but not exclusively,* arises in real property transactions. *However, as in the case of Option Contracts, the subject matter may be anything which parties may make the subject of contracts. For instance, an owner may by contract with a prospective buyer obtain a First*

*Right to Sell;* ..., and so on. All of these contracts are included under the more general term, the Right of First Refusal.

3 ARTHUR LINTON CORBIN & ERIC MILLS HOLMES, CORBIN ON CONTRACTS § 11.3 at 468–69 (rev. ed.1996) (footnotes omitted) (emphasis added). This court has determined that the right of first refusal, when initially granted, is "a dormant set of rights that does not entitle the holder to take any action until receipt of a bona fide offer." *Beiger Heritage Corp. v. Estate of Kilbey,* 667 N.E.2d 184, 186 (Ind.Ct.App.1996), *trans. denied.*[4] Additionally, the right of first refusal is defined generally in Black's Law Dictionary as the "[r]ight to meet terms of proposed contract before it is executed...." BLACK'S LAW DICTIONARY 1325 (6th ed.1990).

■ The right of first refusal is typically associated with the purchase of property, where the holder has the right to purchase the property on the same terms that the seller is willing to accept from a third party. There are numerous Indiana cases regarding a right of first refusal in this context. *See, e.g., Beiger Heritage Corporation v. Kilbey,* 676 N.E.2d 784 (Ind.Ct.App.1997); *Arlington State Bank v. Colvin,* 545 N.E.2d 572 (Ind. Ct.App.1989), *trans. denied; Urban Hotel Management Corp. v. Main & Washington Joint Venture,* 494 N.E.2d 334 (Ind.Ct.App. 1986), *trans. denied.* However, the parties fail to offer, and our research does not reveal, an Indiana case in which the right of first refusal is examined in the context of a right of first refusal to sell.

■ Although the right of first refusal appears most commonly in the context of a potential buyer obtaining the right to purchase property before the owner is allowed to sell the property to a third party, St. Joseph has advanced no acceptable argument as to why the principle can not and should not be applicable in this case.[5] As HOTS

---

4. In discussing the legal significance of a right of first refusal, we indicated that once notice of the offer is received, the right of first refusal is transmuted into an option. *Beiger,* 667 N.E.2d at 186. "An option is a continuing offer whose duration and method of exercise is strictly controlled by the agreement that created it. Generally, the exercise of an option is effective only if it strictly

adheres to the terms stipulated in the contract." *Id.* (citation omitted).

5. St. Joseph argues that the Agreement does not expressly provide a right of first refusal in favor of HOTS to sell new hyperbaric oxygen equipment because nowhere in the Agreement or any other documentation did the phrase "right of first refusal *to sell* " appear. Appellee's Brief at

noted in its reference to CORBIN ON CONTRACTS, the subject matter may be anything which parties may make the subject of contracts, which includes an owner who may by contract with a prospective buyer obtain a first right to sell.[6]

St. Joseph attempts to define HOTS' right as a "right to match" rather than a "right of first refusal," with little argument as to the importance of the distinction. Although Section 6.16 initially refers to HOTS' right to match, it later refers to the right as "the right of first refusal conferred in this Section...." Record at 58. We are compelled to view the section as a whole rather than examine each phrase in isolation. "Particular words and phrases cannot be read alone; we must gather the parties' intentions from the contract considered as a whole." *Buck v. Banks*, 668 N.E.2d 1259, 1261 (Ind. Ct.App.1996).

It is clear from the language in Section 6.16 that St. Joseph was conveying a right to HOTS regarding the potential purchase and installation of a new hyperbaric medical system. Despite St. Joseph's attempt to define HOTS' right as a right to match,[7] a reading of the entire section clearly indicates that St. Joseph was providing HOTS with the right to sell and install a new hyperbaric oxygen system if St. Joseph elected to purchase a new system within a given time frame, provided that HOTS matched the lowest responsive bid or highest ranked proposal.

When viewed collectively, despite the use of two descriptive terms to describe the right,[8] HOTS reserved a right of first refusal to sell. Having found as a matter of law that the Agreement provided HOTS with the right of first refusal to sell, we turn to the question of whether HOTS properly exercised its right. In order to uphold the trial court's grant of summary judgment, given our finding above, we must determine that HOTS failed to properly exercise its right of first refusal to sell as a matter of law.

## II.

HOTS contends that it properly exercised its option by communicating its intent to match Gulf Coast's proposal. St. Joseph maintains that Gulf Coast remained the highest ranked proposal, that HOTS failed to match the Gulf Coast proposal, and that its rationale for not purchasing from HOTS was commercially reasonable.

Once the holder of a right of first refusal receives notice of a third party's offer, the right of first refusal is transmuted into an option. *Beiger*, 667 N.E.2d at 186. The duration and method of exercise of an option is strictly controlled by the agreement that created it. *Id.* "Generally, the exercise

---

7 (emphasis added). Given the context of the Agreement, we are not persuaded by St. Joseph's emphasis on the absence of the words "to sell."

6. As an example, CORBIN ON CONTRACTS cites *Burzynski v. Travers*, 636 F.Supp. 109 (E.D.N.Y. 1986), *judgment affirmed by* 833 F.2d 1002 (2d Cir.1986). In *Burzynski*, a film director successfully enforced his "right of first refusal" to direct against certain writers and producers. Although dealing with a form of employment contract, it is apparent that the director had obtained a right of first refusal to *sell* his services.

7. By attempting to define HOTS' right as a right to match despite the language in Section 6.16 referring to HOTS' right of first refusal, St. Joseph is, in effect, rendering the right to match useless. Accepting St. Joseph's interpretation of the Agreement would leave HOTS with the "right" to submit a bid which matches the lowest responsive bid or highest ranked proposal without requiring St. Joseph to accept it. We are not convinced that the intent of the parties was to

utilize a section of the Agreement to reserve a useless right for HOTS.

8. It is noteworthy that this court has previously indicated that there is a difference of opinion over the proper term for the right of first refusal. In *Urban Hotel*, 494 N.E.2d 334, we indicated:

There is difference of opinion over the proper term for this type of business arrangement. Labels such as, "options to purchase" *Capitol Land Co., Inc. v. Zorn et al.* (1962), 134 Ind. App. 431, 184 N.E.2d 152, "first option to buy" *Di Maria v. Michaels* (1982), 90 A.D.2d 676, 455 N.Y.S.2d 875, and "pre-emptive rights," *Stoneburner v. Fletcher* (1980), Ind.App., 408 N.E.2d 545, while not wholly inaccurate are confusing because these terms also describe other, distinctly different situations. [Citations omitted].
Instead, many courts now use the term, "right of first refusal." *See, e.g.*, [citations omitted]. Therefore, for the sake of clarity, this Court will also use the term "right of first refusal." *Id.* at 336 n. 1.

of an option is effective only if it strictly adheres to the terms stipulated in the contract." *Id.*

■ Section 6.16 of the Agreement indicated that St. Joseph agreed to provide HOTS with the right to match the lowest responsive bid or highest ranked proposal and that:

> As a condition of the right of first refusal ..., Company [HOTS] shall proffer a responsive bid or proposal in connection with (i) the engineering services relating to the installation and the actual installation of the equipment in a permanent site, and (ii) the sale and installation of a new hyperbaric oxygen system....

Record at 59.

In its letter to HOTS in April 1994, St. Joseph provided HOTS with a "Request for Proposal" which outlined the specifications for the hyperbaric oxygen treatment system, and asked that HOTS respond to the request in its entirety. In May 1994, in response to St. Joseph's request, HOTS submitted a proposal using the specification format provided by St. Joseph.

Once St. Joseph notified HOTS that it had selected Gulf Coast based on its ability to provide a system that met the specification outlined in St. Joseph's "Request for Proposal" at the lowest cost, HOTS' right of first refusal was transmuted into an option. *Beiger*, 667 N.E.2d at 186. Since an option is controlled by the agreement that created it, *id.*, we look to the language in the Agreement.

■ The language in Section 6.16 failed to indicate the specific terms required for HOTS to exercise its option once HOTS received notice that St. Joseph intended to

purchase the equipment from a third party. However, in its December 13, 1994 notice, St. Joseph provided direction to HOTS which was not inconsistent with the Agreement. In addition to notifying HOTS that it had chosen a vendor, Gulf Coast, and confirming HOTS' right of first refusal pursuant to "the terms of our current contract," St. Joseph requested that HOTS respond in the following fashion:

> Enclosed is a copy of the proposal from [Gulf Coast]. Please submit in writing your intentions to meet or exceed the pricing and equipment specified by [Gulf Coast] in their proposal....
>
> Your response ... must be received no later than Thursday, December 22, 1994. Failure to respond by December 22, 1994 will result in your forfeiting your right of first refusal.

Record at 296. Although Gulf Coast's third party proposal dictated the terms and conditions of the option to sell,[9] St. Joseph provided the manner for HOTS to exercise its option, given that the right of first refusal had been transmuted into an option.

HOTS mailed and faxed a letter to St. Joseph on December 20, 1994, prior to the deadline imposed by St. Joseph, indicating that "[t]his letter confirms [HOTS'] intent to exercise its right of first refusal to match the hospital's selected lowest responsive bidder, [Gulf Coast's] bid of $982,035 in accordance with Paragraph 6.16 of HOTS Exclusive Hyperbaric Services Agreement." Record at 374. By communicating its intent to match Gulf Coast's proposal before December 22, 1994, HOTS exercised its option in the manner set forth by St. Joseph.[10] At the point HOTS agreed to match Gulf Coast's propos-

9. In a case involving a first right of refusal to buy, the court in *West Texas Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554 (5th Cir.1990), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1105, 113 L.Ed.2d 215 (1991), indicated "when the preemptive rightholder receives notice that the property owner intends to sell his property to a third party, the rightholder's right of first refusal matures into an option, for which the third party offer dictates the terms." *Id.* at 1565.

10. Although there may have been some misunderstanding regarding acceptable materials for the construction, this matter was subsequently

cleared up. In its December 21, 1994 letter, St. Joseph indicated that HOTS was required to use the same brands with the same specifications as "listed on a line for line basis" in Gulf Coast's proposal. Due to the misunderstanding, St. Joseph was "agreeable to extending the deadline for response from December 22nd until December 29, 1994." Record at 376. On December 27, 1994, HOTS sent a letter to St. Joseph reaffirming its desire to match Gulf Coast's proposal, including the level of installation and the listed brand names on a line for line basis.

al, HOTS' option to sell was complete, the terms and conditions of which were set forth in the third party proposal submitted by Gulf Coast.

Certainly, the additional concerns stated by St. Joseph may reflect legitimate business considerations in choosing a vendor, but in the context of this case they are only relevant to the wisdom of granting HOTS the right of first refusal at the outset. HOTS performed as required to enforce its rights under the parties' agreement. St. Joseph was not entitled at that juncture to impose additional requirements upon the right it had granted in 1990.

The summary judgment in favor of St. Joseph is reversed and the case is remanded for further proceedings consistent herewith.

Reversed and remanded.

STATON and KIRSCH, JJ., concur.