APPLE GLEN CROSSING, L.L.C., Apple Glen Investors, L.P., Borbeck Real Estate Company, Inc. and H. Duane Bobeck, Appellant–Plaintiffs,

v.

TRADEMARK RETAIL, INC., and Terry Montesi, Appellee–Defendants.

No. 02A05–0103–CV–110.

Court of Appeals of Indiana.

Dec. 26, 2001.

 

Gene R. Leeuw, John M. Mead, Leeuw & Doyle, P.C., Indianapolis, IN, Attorney for Appellant.

Edward L. Murphy, Jr., Diana C. Bauer, Miller, Carson, Boxberger & Murphy, LLP, Fort Wayne, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Apple Glen Crossing, LLC ("Apple Glen"), Apple Glen Investors, LP ("AGI"), Bobeck Real Estate Company, and H. Duane Bobeck (collectively referred to as the "appellants") appeal the trial court's grant of a preliminary injunction in favor of Trademark Retail, Inc. ("Trademark") and Terri Montesi. We affirm.

### *Issues*

The appellants raise the following consolidated and restated issues for our review:

1. Whether the trial court abused its discretion in granting the preliminary injunction in favor of Trademark; and

2. Whether the trial court abused its discretion in granting the preliminary injunction in favor of Trademark without requiring Trademark to post a security bond pursuant to Indiana Trial Rule 65(C).

### *Facts and Procedural History*

The facts reveal that Trademark is a Texas corporation with its principal place of business in Fort Worth, Texas. Trademark is a real estate and shopping center developer. It has developed and managed nineteen shopping centers in the United States. Montesi, a resident of Texas, is the president of Trademark. AGI is a limited partnership organized under Indiana law with Bobeck Real Estate

Company as its general partner. Bobeck, a resident of Indiana, is the president of Bobeck Real Estate Company.

On May 28, 1998, Trademark and AGI formed Apple Glen, a limited liability company, for the purpose of developing a shopping center to be known as Apple Glen Crossing in Allen County, Indiana. AGI is the majority member of Apple Glen, Trademark is the minority member of the limited liability company.[1] That same day, the parties entered into a contract referred to as the Operating Agreement. Under the terms of the Operating Agreement, Trademark was to act as the sole manager of Apple Glen.

On May 28, 1998, Trademark and AGI also entered into an agreement entitled the Development, Marketing, and Management Agreement. Under the terms of that agreement, Apple Glen employed Trademark to develop, market, and manage the shopping center. Trademark agreed to exercise diligence and good faith to develop the shopping center by leasing or selling at least ninety percent of the proposed buildable area of the shopping center by May 28, 2001. The Development, Marketing, Management Agreement also granted Trademark the exclusive right to contract and hire brokers and agents for the leasing of the shopping center.

On September 15, 2000, AGI notified Trademark that it was in default of the Operating Agreement and that it planned to terminate Trademark as manager of Apple Glen. On October 6, 2000, Trademark filed a complaint against AGI in the United States District Court for the Northern District of Indiana, Fort Wayne Division, alleging breach of fiduciary duty and interference with contractual and business relations. Twelve days later, members of Apple Glen met and voted to remove Trademark as manager of Apple Glen and appoint AGI as manager of the limited liability company.

On October 26, 2000, AGI filed a complaint against Trademark[2] in the Allen Circuit Court alleging breach of contract, breach of fiduciary duty, violation of the Indiana Trade Secrets Act, and requesting an accounting. On November 7, 2000, Trademark filed a complaint against AGI in the Allen Superior Court alleging breach of fiduciary duty, interference with contractual and business relations, and wrongful termination. Trademark sought in part relief in the form of a preliminary and permanent injunction against AGI enjoining the removal of Trademark as manager of Apple Glen and the shopping center and prohibiting AGI from interfering with Trademark's management of Apple Glen and the shopping center. On November 28, 2000, the two cases were consolidated and on December 5, 2000, they were transferred to the Allen Superior Court.

On December 22, 2000, AGI filed with the trial court a verified motion for preliminary injunction seeking to enjoin Trademark from acting as manager of Apple Glen and a motion for replevin of its books, records, and financial information which Trademark held in Fort Worth, Texas. On January 18, 2001, Trademark filed with the trial court an amended complaint against AGI. Following a hearing on the verified cross-motions for injunctive relief,

1. The record reveals that AGI contributed 8 million dollars in property and $58,000.00 in cash in exchange for 65% interest in Apple Glen. Trademark contributed $31,500.00 in cash in exchange for 35% interest in the limited liability company.

2. We note the complaint also named Simon Property Group, Inc. as a defendant. Simon was dismissed without prejudice on December 8, 2000.

the trial court entered findings of facts and conclusions of law and issued a preliminary injunction in favor of Trademark against AGI. The trial court denied AGI's request for injunctive relief. The preliminary injunction in favor of Trademark enjoined AGI from attempting to remove Trademark as manager of Apple Glen and the shopping center. This appeal ensued.

## Discussion and Decision

### I. Injunctive Relief

#### A. Standard of Review

The issuance of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. *Reilly v. Daly*, 666 N.E.2d 439, 443 (Ind.Ct. App.1996), *trans. denied.* When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. Ind. Trial Rule 52(A). When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. *Norlund v. Faust*, 675 N.E.2d 1142, 1149 (Ind.Ct.App.1997), *trans. denied.* The trial court's judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.*

The trial court's discretion to grant or deny preliminary injunctive relief is measured by several factors: 1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; 2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; 3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and 4) whether, by the grant of the preliminary injunction, the public interest would be disserved. *Reilly*, 666 N.E.2d at 443. In order to grant a preliminary injunction, the moving party has the burden of showing, by a preponderance of the evidence, that the facts and circumstances entitle him to injunctive relief. *Id.* The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. *Id.*

#### B. Adequate Remedy at Law

The appellants first argue that the trial court abused its discretion in granting a preliminary injunction in favor of the Trademark because an adequate remedy at law is available, that is a suit for money damages. We disagree without addressing the merits of this argument.

A legal remedy is adequate only where it is as "plain and complete and adequate-or, in other words, as practical and efficient to the ends of justice and its prompt administration-as the remedy in equity." *McKain v. Rigsby*, 250 Ind. 438, 237 N.E.2d 99, 103 (1968). The trial court has a duty to determine "whether the legal remedy is as full and adequate as the equitable remedy." *Id.* However, a party which suffers "mere economic injury" is not entitled to injunctive relief because an award of post-trial damages is sufficient to make the party whole. *Xantech Corp. v. Ramco Indus., Inc.*, 643 N.E.2d 918, 921 (Ind.Ct.App.1994). This is true because the ability to obtain damages, in the form

of a money judgment for economic injury, represents an adequate remedy at law. *Daugherty v. Allen,* 729 N.E.2d 228, 235 (Ind.Ct.App.2000).

 We believe that the appellants waived the defense of an adequate remedy at law by contractual agreement. The Operating Agreement, entered into by Trademark and AGI on May 28, 1998, provides in pertinent part:

13. Remedies

13.1 If an Event of Default occurs, any Member not in default, or [Apple Glen], may seek the following remedies against the defaulting Member, which shall be cumulative and are not mutually exclusive:

13.1.1 All legal and equitable remedies available.

* * *

13.2 The Members agree that it may be impossible to measure in money the damages which will accrue to a party by reason of a failure to perform any of the obligations under this Agreement. Therefore, if any action or proceeding is instituted against a Member to specifically enforce the provisions of this Agreement, the defaulting Member shall be deemed to waive the claim or defense that such party has an adequate remedy at law.

Appellant's Appendix at 458–59. When interpreting an unambiguous contract, we give effect to the intentions of the parties as expressed in the four corners of the instrument. *Hyperbaric Oxygen Therapy Sys., Inc. v. St. Joseph Med. Ctr. of Ft. Wayne, Inc.,* 683 N.E.2d 243, 247 (Ind.Ct. App.1997), *trans. denied.* Clear, plain, unambiguous terms are conclusive of that intent. *Id.* We will neither construe clear and unambiguous provisions nor add provisions not agreed upon by the parties. *Id.*

 Applying the plain and ordinary language of the Operating Agreement, we hold that the appellants waived their argument that the trial court abused its discretion in granting the preliminary injunction in favor of Trademark because an adequate remedy at law was available, that is a suit for money damages. Therefore, this prong for the grant of a preliminary injunction is satisfied.

## C. Reasonable Likelihood of Success on the Merits

 The appellants next argue that Trademark failed to demonstrate a probability of success on the merits and thus, the trial court abused its discretion in granting the preliminary injunction. We disagree.

 In order to prove that it had a reasonable likelihood of succeeding on the merits, Trademark must establish a prima facie case through substantial, probative evidence that it did not default the Operating Agreement, and thus, was wrongfully removed as manager of Apple Glen and the shopping center. Substantial evidence is that which is "more than a scintilla and less than a preponderance." *Partlow v. Indiana Family and Soc. Servs. Admin.,* 717 N.E.2d 1212, 1217 (Ind.Ct.App.1999). Although Trademark had to establish a prima face case, it was not required to show that it was entitled to relief as a matter of law, nor was it required to prove and plead a case which would entitle it to relief upon the merits. *See Indiana High School Athletic Ass'n, Inc. v. Martin,* 731 N.E.2d 1, 7 (Ind.Ct.App.2000).

The Operating Agreement defines default as:

The failure to observe or comply with any provision or covenant in this Agreement of the Development Agreement, and such default is not cured within 15 days of the date Notice of such default is

given, which Notice shall specify with reasonable particularity of the basis for the default claimed.

Appellant's Appendix at 427. The Operating Agreement further provides that the manager, Trademark, may be removed by a majority interest of the members of the Apple Glen if there is an event of default by Trademark. *Id.* at 437.

The appellants contend that Trademark defaulted the Operating Agreement by signing a tenant lease, by signing a construction contract, paying for site work, paying the premiums of the construction company's performance bond, approving change orders, executing a large landscaping contract, and withholding financial books and records. The appellants argue that these acts by Trademark violated section 4.2 of the Operating Agreement which provides:

> No act shall be taken, sum expended, obligation incurred by [Trademark] for or on behalf of [Apple Glen] with respect to a matter within the scope of a Major Decision affecting, directly, indirectly, [Apple Glen] or the [shopping mall], unless proved by all the Members. With respect to Major Decisions described in sections 1.37.2, 1.37.10, 1.37.11, or 1.37.12 [3] of this Agreement, [Trademark] shall give Notice of [Trademark's] recommendations regarding such Major

Decisions to the Members for their comment and review.

Appellant's Appendix at 434.

Following the hearing on the verified cross-motions for injunctive relief, the trial court entered detailed findings of facts, concluding in part that:

> AGI asserts its November 3, 1999, August 25, 2000 and September 12, 2000 letters each constitute notices of Events of Default. The Operating Agreement sets forth the specific requirements which must be followed in order to remove Trademark as manager of [Apple Glen].

> First, under Sections 1.21 and 14.1, AGI was required to provide Trademark with written notice of an Event of Default. Second, under Section 1.21, Trademark had fifteen (15) days within which to cure the Event of Default as set forth in the Notice. Only when the Event of Default is not cured within fifteen (15) days from the date of the Notice, may AGI proceed to remove Trademark.

> The September 12, 2000 letter from AGI to Trademark, is written Notice of an Event of Default. However, AGI's attempted removal of Trademark by its September 15, 2000 letter is contrary to the terms of the Operating Agreement and is, therefore, defective. AGI did not permit Trademark the required fifteen

---

**3.** We note that the Operating Agreement provides that:

1.37 "Major Decision." Each of the following decisions shall constitute Major Decisions, unless all the Members otherwise agree in writing:

\* \* \*

 1.37.2 Approving any leases for space in the Project in excess of 4,000 square feet or requiring more than $50 per square foot in tenant improvements.

\* \* \*

 1.37.10 Entering into or amending any contract with Trademark or its affiliates.

 1.37.11 Entering into or amending any contract under this Agreement or the Development Agreement, where the payments to be made to a party under such contract are reasonably anticipated to exceed $10,000 in any one calendar year.

 1.37.12 Employing accountants, legal counsel, managing agents, or other experts to perform services for [Apple Glen], and to compensate them from [Apple Glen] funds.

Appellant's Appendix at 428–29.

(15) day period for curing the default set forth in AGI's September 12, 2000 letter. AGI's removal of Trademark was void. Under the terms of the Management Agreement, Trademark had thirty (30) days after written notice, to cure any alleged defect.[4] Under either agreement, AGI's September 15, 2000 letter was premature, improper and void.

Notwithstanding the purported removal of Trademark, AGI through Bobeck, authorized Trademark both in writing and verbally to pay Change Orders 39, 43 and 46–52. These are the very same change orders objected to by AGI in its September 12, 2000 letter, and which formed the basis of the Event of Default for which AGI terminated Trademark as manager. Since the change orders were paid at the direction of AGI and Bobeck, the Event of Default has been cured and cannot form a legal basis for removing Trademark as manager of [Apple Glen], or of the shopping center.

Bobeck and AGI have raised the letters of November 3, 1999 and August 25, 2000 as other uncured defaults for which notices were given. The defaults enumerated in those letters refer to the construction loan, the leases forming the basis for the construction loan, the Irmscher construction contract, the Wal–Mart site work and the Irmscher performance bond payment with [Apple Glen] funds. Assuming arguendo, that

these items did constitute Events of Default, none can now form a basis for the removal of Trademark. The November 3, 1999 letter is over a year old. It does not specifically refer to any Event of Default with particularity. In fact, AGI did not intend "to prevent the construction loan and building schedule from being consummated." This letter is not an Event of Default requiring a cure.

The August 25, 2000 letter referred to "events" which happened in 1999, and which were known to AGI in 1999. AGI knew Irmscher was the general contractor and knew on July 15, 1999 that Trademark had entered into the Design/Build contract with Irmscher. AGI and Bobeck knew in 1999 that the Wal–Mart site work had been completed, authorized, and paid for with [Apple Glen] funds. Neither in July, August or September 1999 did AGI object, in writing, to Irmscher as the general contractor, or the monies spent for the Wal–Mart site work. Bobeck and AGI were active participants in the Wal–Mart closing, and received the benefits of the closing, that is, monies paid by Wal–Mart and received by AGI. AGI cannot, after having received the fruits of the Wal–Mart transaction, complain that the payment of the site work was an Event of Default. AGI waived this right by:

 (a) not giving written notice that the site work payment was an Event of

---

4. The Development, Marketing, and Management Agreement provides in pertinent part that:

> [Apple Glen] may terminate this Agreement for any one or more of the following reasons upon delivery of written notice to [Trademark], and such termination shall be effective on the date specified in the notice except as otherwise set forth in Section 6(A)(i):
> [Trademark] has defaulted in the performance of its obligations hereunder and has

not remedied or cured the facts giving rise to [Apple Glen's] right to terminate under this subsection within thirty (30) days after written notice from [Apple Glen] specifying such facts, or if such cure cannot be effected within thirty (30) days, then within a reasonable time thereafter not to exceed a total of sixty (60) days after notice from [Apple Glen] so long as [Trademark] is diligently proceeding to cure such default. . . .
Appellant's Appendix at 475.

Default at the time the work was being performed;

(b) unanimously consenting in writing to the Wal–Mart closing;

(c) actively participating in the closing of the Wal–Mart deal; and

(d) receiving the benefits of the Wal–Mart transaction.

Likewise, Bobeck and AGI, who are very active members of [Apple Glen] had full knowledge Irmscher was providing construction services. Nothwithstanding their knowledge of Irmscher's continuing construction work, Bobeck and AGI failed to provide written notice of their objection to Irmscher or its work.

In order to consummate the construction loan with the Bank of America, several requirements had to be met, including a disclosure of all of the leases that formed the basis of the construction loan, and further including a performance bond from Irmscher. AGI had notice of these requirements, and as a member of [Apple Glen], was required to participate in and attend the final construction loan closing.

Subsequent to AGI's November 3, 1999, letter, AGI signed consents for the construction loan closing with Bank of America. Attached to the construction loan documents were the leases which formed the basis of the construction loan. Whatever objections AGI had to the leases or the performance bond premium in 1999, were waived by virtue of AGI:

(a) executing the written consents to the construction loan closing;

(b) failing to provide written notice of an Event of Default based on either the leases or the Irmscher performance bond premium payment with [Apple Glen] funds;

(c) actively participate in the closing; and

(d) receiving a direct benefit at closing in the form of $4,000,000.00.

The "Events of Default" contained in the August 25, 2000 letter, therefore, have long since been waived by AGI. AGI failed to assert any of the rights that it might have had with respect to those "Events" in a timely fashion. AGI intentionally relinquished those known rights, having both the knowledge of the existence of its rights and the intention to relinquish those rights by virtue of its actions.

Appellant's Appendix at 32–35.

We believe that the trial court's findings of fact support the trial court's conclusion that Trademark has made a prima facie case that it was improperly removed as manager of Apple Glen and the shopping center. The appellants have failed to establish that the trial court's comprehensive findings of facts are erroneous and do not support its thorough conclusions of law. Moreover, we believe that Trademark has made a prima facie case that the appellants failed to provide Trademark the required period to cure the default set forth in AGI's letter to Trademark dated September 12, 2000, and that Trademark in fact cured said default. Further, there is substantial evidence that the appellants either acquiesced in, consented to, or impliedly or expressly approved the defaults contained in all three of the notice of default letters sent by AGI to Trademark. It appears from the record that the appellants had full knowledge of the managerial acts and decisions made by Trademark, and gave Trademark "free reign and unbridled discretion" in operating, developing, and managing Apple Glen and the shopping center. Therefore, we believe that Trademark has met its burden that it has a reasonable likelihood of success on

the merits, and has satisfied this prong for a preliminary injunction.

### D. Balance of Harms

The appellants also argue that the balance of harms does not favor the grant of the preliminary injunction. We disagree.

 The balance of harms analysis examines the harm that the granting or denying of the preliminary injunction will have upon the parties to the dispute and upon other interested parties, including the public. Consequently, a court in the exercise of its discretion must take into consideration the relative inconvenience, hardship, or injury which the parties will sustain by the granting or refusing of the preliminary injunction. *See, e.g., Reilly,* 666 N.E.2d at 443. Generally, when the issuance of a preliminary injunction will cause great injury to a defendant, and will confer no benefit or very little benefit in comparison to the plaintiff, a trial court should deny the request for such equitable relief.

 We accept the trial court's determination that on balance, the harm to Trademark of not granting the injunction is greater than the harm to the appellants from granting it. Trademark's lease negotiations will undoubtedly be interrupted or thwarted if Trademark is removed as manager of Apple Glen. Moreover, Trademark guaranteed substantial portions of the Bank of America construction loan and their borrowing capacity would be impaired if a change of managers occurred. Also, it appears that Trademark has continued to act as the manager of Apple Glen even after the dispute arose between AGI and Trademark. Trademark has continued to collect rents and to negotiate prospective leases on behalf of Apple Glen. At this stage of the litigation, we find no evidence that Trademark has harmed the appellants while acting in the capacity as manager of Apple Glen and the shopping center. To the contrary, it appears that Trademark has increased the value of the appellants' property and has moved substantially forward in developing the shopping center. Therefore, we hold that the balance of harms weighs in favor of the grant of the preliminary injunction. Consequently, Trademark has satisfied this prong of a preliminary injunction.

### E. Public Interest

In addition, the appellants argue that the trial court abused its discretion in determining that the public interest would be best served by the grant of the preliminary injunction. We disagree.

 The effect of the injunction upon the public interest must be weighed with the relative potential harms to the parties. *Hacienda Mexican Rest. of Kalamazoo Corp. v. Hacienda Franchise Group, Inc.,* 569 N.E.2d 661, 666 (Ind.Ct. App.1991), *trans. denied.* Where an injunction is sought which would adversely affect a public interest, the court may in the public interest withhold relief until a final determination of the rights of the parties, although postponement may be burdensome to the plaintiff. *Fumo v. Medical Group of Michigan City, Inc.,* 590 N.E.2d 1103, 1108 (Ind.Ct.App.1992).

 We see no reason to disturb the trial court's conclusion that the "public interest will not be disserved if Trademark remains as manager of [Apple Glen] and of the shopping center, and if Trademark continues to move forward to complete development of the shopping center." Appellant's Appendix at 36. There is nothing in the record to indicate that the preliminary injunction adversely affects the public interest. In fact, the trial court by entering the preliminary injunction is imposing an equitable remedy that was contemplated by AGI and Trademark when it entered

into the Operating Agreement. Therefore, we hold that the trial court's grant of the preliminary injunction in favor of Trademark did not disserve the public interest.

## II. Security Bond

The appellants also contend that the trial court abused its discretion in granting the preliminary injunction in favor of Trademark without requiring Trademark to post a security bond pursuant to Trial Rule 65(C). We find that the trial court ordered Trademark to post a security bond.

Indiana Trial Rule 65(C) provides in pertinent part that:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The reason for requiring security relates to the expeditious manner in which the preliminary injunctive relief is issued and to the lack of a full hearing upon the facts. *National Sanitary Supply Co. v. Wright*, 644 N.E.2d 903, 905 (Ind.Ct.App. 1994), *trans. denied.* A surety bond is a convenient manifestation of financial responsibility on the part of a plaintiff, and, by operation of Trial Rule 65.1, provides an expeditious means of recovery of damages by a prevailing defendant. *Howard D. Johnson Co. v. Parkside Dev. Corp.*, 169 Ind.App. 379, 348 N.E.2d 656, 663 (1976). The trial judge does not abuse his discretion by refusing to require a security bond where the opposing party fails to provide evidence that he would suffer any damages or costs should it later be determined that the injunction was wrongfully issued. *Kennedy v. Kennedy*, 616 N.E.2d 39, 44 (Ind.Ct.App.1993), *trans. denied.*

The failure of a trial court to require a party to post a security bond pursuant to Trial Rule 65(C) constitutes mere error that is insufficient to void an injunction. *Pickett v. Pelican Serv. Assocs.*, 481 N.E.2d 1113, 1120 (Ind.Ct.App.1985), *trans. denied.*

The trial court's March 12, 2001, order provides in pertinent part that:

> The Court further finds that [Apple Glen] has substantial assets for significant value within this Court's jurisdiction to serve as security for any damages that [AGI] may incur, if they are found to have been wrongfully enjoined.

R. 37. It is apparent that the trial order utilized Trademark's 35% interest in Apple Glen as the security bond. Thus, contrary to appellants' assertion, the trial court required Trademark to post a security bond and this bond was something of value.

## *Conclusion*

Based on the foregoing, we hold that the trial court properly granted the preliminary injunction in favor of Trademark. In addition, we hold that contrary to the appellants' assertion, the trial court required Trademark to post a security bond of some value pursuant to Trial Rule 65(C).

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.