**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 03 2013, 5:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEY FOR APPELLEE:

**TYSON P. SCHROEDER**
Boehl Stopher & Graves, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANGELA D. HARTWELL, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 39A01-1305-CT-195 |
| | ) | |
| INDIANA INSURANCE COMPANY, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable Ted R. Todd, Senior Judge
Cause No. 39C01-1110-CT-917

**December 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

In June of 2009, Appellant-Plaintiff Angela Hartwell was injured in an automobile accident involving William McRoberts. At the time, Harwell was insured by Appellee-Defendant Indiana Insurance Company and McRoberts was insured by Geico Insurance Company. Hartwell brought suit against McRoberts and Geico, and Geico eventually offered to settle with Hartwell for McRoberts's policy limit, which was $25,000.00. Hartwell notified Indiana Insurance of Geico's offer and expressed an intent to pursue a claim pursuant to the uninsured motorist coverage she had with Indiana Insurance. Eventually, Hartwell executed a release ("the Release") with Geico in exchange for the policy limits.

In October of 2011, Hartwell sued Indiana Insurance, seeking coverage pursuant to her underinsured motorist coverage. Indiana Insurance responded and moved for summary judgment, arguing that the Release had released Indiana Insurance as well. After a hearing, the trial court entered summary judgment in favor of Indiana Insurance on the question of coverage. Hartwell argues that (1) the Release is ambiguous and that the intent of the parties to it is a question of fact, thereby precluding the entry of summary judgment; (2) the "stranger to the contract" rule allows the examination of parol evidence, which indicates that Hartwell did not intend to release Indiana Insurance; and (3) the "joint tortfeasor" rule has no applicability in the case and is no longer good law in any event. Concluding that the Release is ambiguous regarding the Hartwells' and Geico's intent to release Indiana Insurance, we reverse and remand for trial on that question.

## FACTS AND PROCEDURAL HISTORY

On June 2, 2009, Hartwell, who had automobile insurance with Indiana Insurance,

was involved in an accident with McRoberts, who was insured by Geico. On May 21, 2010, Hartwell contacted Indiana Insurance through her attorney, notifying Indiana Insurance that Geico had tendered her a settlement offer of McRoberts's $25,000.00 policy limit and requesting Indiana Insurance's "permission to accept the $25,000.00 while pursuing an underinsured claim with your company." Appellant's App. p. 51. On May 28, 2010, Indiana Insurance claim specialist Nancy Rupe responded, requesting "a copy of that offer and include a copy of their Declarations Page as well." Appellant's App. p. 52. Rupe also requested "a copy of your demand package so that we may consider your claim under the Underinsured Motorist Bodily Injury portion of this policy." Appellant's App. p. 52. Hartwell forwarded the requested materials to Indiana Insurance, and, on August 18, 2010, Rupe replied, "We agree to waive our subrogation and allow you to accept the Geico [l]imits." Appellant's App. p. 57.

On October 1, 2010, Hartwell, in exchange to $25,000.00, executed the Release in favor of Geico, which read in operational part as follows:

> I/we, Angela and John Hartwell, Releasor(s) of 8577 North Breeding Road, City of Dupont, State of Indiana, being over the age of majority, for and in consideration of a check for the sum of Twenty Five Thousand dollars ($25,000.00), lawful money of the United States of America to me/us in hand paid, the receipt of which is hereby acknowledged, do for myself/ourselves, my/our heirs, executors, administrators, successors and assigns, hereby remise, release, and forever discharge William McRoberts and Geico Indemnity Company, Releasee(s), successors and assigns, and/or his, her or their associates, heirs, executors and administrators, and all other persons, firms or corporations of and from any and every claim, demand, right or cause of action, of whatever kind or nature, on account of or in any way growing out of any and all personal injuries and consequences thereof, including, but not limited to, all causes of action preserved by the wrongful death statute applicable, any loss of services and consortium, any injuries which may exist

3

but which at this time are unknown and unanticipated and which may develop at some time in the future, all unforeseen developments arising from known injuries, and any and all property damage resulting or to result from an accident that occurred on or about the 2nd day of June, 2009, at or near Wilson Avenue, and especially all liability arising out of said accident including, but not limited to, all liability for contribution and/or indemnity.

AS A FURTHER CONSIDERATION FOR THE MAKING OF SAID SETTLEMENT AND PAYMENT, IT IS EXPRESSLY WARRANTED AND AGREED:

(1)     That I/we understand fully that this is a final settlement and disposition of the disputes both as to the legal liability for said accident, casualty, or event and as to the nature of the injury, illness, disease and/or damage which I/we have sustained and I/we understand that liability is denied by William McRoberts and Geico Indemnity Company Releasee(s), and it is covenanted and agrees between the Releasor(s) and Releasee(s) herein that this release and settlement is not to be construed as an admission of liability on the part of the Releasor(s) of his agents and servants, and any claim of whatever kind or nature the Releasee(s) against said Releasor(s) of his agents and servants, and any claim of whatever kind or nature the Releasee(s) might have or hereafter having arising from said accident is expressly reserved to them.

(2)     That I/we do hereby for myself/ourselves, my/our heirs, executors, administrators, successors, assigns and next of kin covenant to indemnify and save harmless the Releasee(s) from any and every claim or demand of every kind or character arising from said accident which may ever be asserted.

(3)     That no promise, agreement, statement or representation not herein expressed has been made to or relied upon by me/us and this release contains the entire agreement between the parties.

Appellant's App. p. 59.

On October 3, 2011, Hartwell filed suit against Indiana Insurance, seeking coverage pursuant to her underinsured motorist coverage. On February 17, 2012, Indiana Insurance moved for summary judgment, to which Hartwell replied on March 20. On April 11, 2013, the trial court granted summary judgment in Indiana Insurance's favor.

## DISCUSSION AND DECISION

4

When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

## Whether the Release Covers Indiana Insurance

Hartwell argues that the Release is ambiguous, precluding summary judgment in Indiana Insurance's favor and necessitating trial on the question of who the parties intended to release. Indiana Insurance argues that the Release, although executed in favor of McRoberts and Geico, unambiguously released Indiana Insurance as well from all possible liability arising out of Hartwell's accident.

> A release executed in exchange for proper consideration works to release only those parties to the agreement unless it is clear from the document that others are to be released as well. A release, as with any contract, should be interpreted according to the standard rules of contract law. Therefore, from this point forward, release documents shall be interpreted in the same manner as any other contract document, with the intention of the parties regarding the purpose of the document governing.

5

*Huffman v. Monroe Cnty. Cmty. Sch. Corp.*, 588 N.E.2d 1264, 1267 (Ind. 1992).

"The first rule in the interpretation of contracts is to give meaning and effect to the intention of the parties as expressed in the language of the contract." *Stech v. Panel Mart, Inc.*, 434 N.E.2d 97, 100 (Ind. Ct. App. 1982). "In ascertaining the intention of the parties, a court must construe the instrument as a whole, giving effect to every portion, if possible." *Id.* "In interpreting an unambiguous contract, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent." *Oxford Fin. Group, Ltd. v. Evans*, 795 N.E.2d 1135, 1142 (citing *Hyperbaric Oxygen Therapy Sys., Inc. v. St. Joseph Med. Ctr. of Ft. Wayne, Inc.*, 683 N.E.2d 243, 247 (Ind. Ct. App. 1997)). "Courts may not construe clear and unambiguous provisions, nor may it add provisions not agreed upon by the parties." *Id.* (citing *Hyperbaric Oxygen Therapy Sys.*, 683 N.E.2d at 247-48). However, it is well-settled that "[i]f the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract." *Newnam Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396, 401 (Ind. Ct. App. 2007). "A contract is ambiguous only if reasonable persons would differ as to the meaning of its terms." *Oxford Fin. Group*, 795 N.E.2d at 1142 (citing *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002)).

We conclude that, read as a whole, the Release is ambiguous. Indiana Insurance is correct that it purports to release "all other persons, firms or corporations" from liability related to Hartwell's accident. Appellant's App. p. 59. This phrase, however, is contradicted by other provisions of the Release. First, only McRoberts and Geico are identified as

6

"Releasee(s)[.]" Appellant's App. p. 59. While it is possible that this term was meant to be non-exhaustive, it is just as reasonable to read it as exhaustive. Moreover, in paragraph (1), only McRoberts and Geico are mentioned as denying liability, not "all persons." Finally, in paragraph (2), the Hartwells agree "to indemnify and save harmless *the Releasee(s)* from any and every claim or demand of every kind or character arising from said accident which may ever be asserted[,]" not "all persons." Appellant's App. p. 59 (emphasis added). In summary, it is just as reasonable to conclude that the Release covers Indiana Insurance as it is to conclude that it does not. Consequently, we must conclude that the trial court erred in granting summary judgment in favor of Indiana Insurance and remand for trial on the question, with the fact-finder being able to consider parole evidence regarding Hartwell's and Geico's intent. *See Huffman*, 588 N.E.2d at 1268 ("The agreement in this case did not clearly identify who was intended to be released by its provisions. Consequently, this case must be remanded to the trial court for a determination as to whether the parties to the release intended it to release MCCSC.").

The judgment of the trial court is reversed, and the cause is remanded for further proceedings.[1]

BAILEY, J., and MAY, J., concur.

---

[1] Because we have concluded that the Release was inherently ambiguous, we need not address Hartwell's other arguments.

7